IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ASSOCIATED INDUSTRIES INSURANCE COMPANY, INC., ) ) ) | |
| Plaintiff, ) | <u>PUBLISH</u> |
| ) | |
| v. ) | CIVIL ACTION 22-0484-WS-B |
| ) | |
| WILSON'S POOL DESIGN, LLC, et al., ) ) | |
| Defendants. ) | |

**ORDER**

This declaratory judgment action was filed in December 2022 and initially assigned to the Magistrate Judge.  On June 30, 2023, the plaintiff filed a motion for default judgment, (Doc. 34), prompting a transfer of the case to the undersigned.  Upon initial review of the file, the Court questioned the existence of subject matter jurisdiction and gave the plaintiff an opportunity to address the issue.  (Doc. 35).[1]  The plaintiff has done so.  (Doc. 36).  After careful consideration, the Court concludes that it lacks subject matter jurisdiction.

**BACKGROUND**

According to the complaint, (Doc. 1), the plaintiff issued the remaining defendants (collectively, "Wilson") a commercial lines insurance policy ("the Policy") on August 26, 2020.  The Policy was renewed twice, through August 26, 2023.  The Policy carries a per-occurrence limit of $1 million and an aggregate limit of $2 million.  In August 2022,

---

[1] "Courts have an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it." *Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010). Because, "once a federal court determines that it is without subject matter jurisdiction, the court is powerless to continue," it "should inquire into whether it has subject matter jurisdiction at the earliest possible stage in the proceedings." *University of South Alabama v. American Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999).

the dismissed defendants ("the Atwoods") sued Wilson in state court, alleging claims for breach of contract, fraud, negligence, wantonness, and nuisance in connection with Wilson's construction of a pool on the Atwoods' property. The instant complaint alleges that Wilson made material misrepresentations in its application, but for which the plaintiff would not have issued the Policy, or would not have done so at the rate and/or with the coverage provided. Count One seeks rescission of the Policy on this basis, while Count Two seeks a declaration that the Atwoods' claims are not covered due to various provisions of the Policy.[2]

## DISCUSSION

"[W]here jurisdiction is based on a claim for indeterminate damages, ... the party seeking to invoke federal jurisdiction bears the burden of proving by a preponderance of the evidence that the claim on which it is basing jurisdiction meets the jurisdictional minimum." *Federated Mutual Insurance Co. v. McKinnon Motors, LLC*, 329 F.3d 805, 807 (11th Cir. 2003). This principle applies to declaratory judgment actions brought in federal court by an insurer. *Id*. In such cases, the raw conclusion of the declaratory judgment complaint that the amount in controversy exceeds the jurisdictional amount does not keep the relief sought from being indeterminate. *See, e.g., St. Paul Reinsurance Co. v. Greenberg*, 134 F.3d 1250, 1252, 1253-54 (11th Cir. 1998) (where the insurer's declaratory judgment complaint alleged that the amount in controversy exceeded $50,000 (then the jurisdictional threshold)), the Court treated the relief sought as indeterminate); *accord Fastcase, Inc. v. Lawriter, LLC*, 907 F.3d 1335, 1339, 1343 (11th Cir. 2018) (declaratory judgment complaint's allegation that the plaintiff's potential liability "exceeded $75,000" presented a "claim for an indeterminate amount of damages"). Because the complaint alleges only that the amount in controversy exceeds $75,000, (Doc. 1 at 2), the relief sought is indeterminate and the plaintiff must establish that the jurisdictional threshold is exceeded. To meet its burden, the plaintiff "must prove by a

---

[2] The plaintiff effected a voluntary dismissal of the Atwoods shortly before the case was transferred to the undersigned. (Docs. 30, 31).

preponderance of the evidence that the amount in controversy more likely than not exceeds the … jurisdictional requirement." *Roe v. Michelin North America, Inc.*, 613 F.3d 1058, 1061 (11th Cir. 2010) (internal quotes omitted).

In its previous order, the Court was unable to find that the Atwood complaint (an exhibit to the plaintiff's pleading) seeks damages for which the plaintiff may be responsible in excess of $75,000, exclusive of interest and costs. The Atwood complaint itself is indeterminate, demanding only damages in excess of the state court's $20,000 jurisdictional minimum. Moreover, while the complaint alleges that the Atwoods have paid Wilson a substantial sum, it does not allege that Wilson has provided no value in exchange for that sum but only that Wilson has not finished the project. The Court therefore was presented no non-speculative means of determining that the Atwoods, if successful, would recover any significant amount of damages, much less damages exceeding the $75,000 jurisdictional threshold. (Doc. 35).

The plaintiff has elected not to address Count Two, making no attempt to sustain its jurisdictional burden based on its effort to avoid liability with respect to the Atwood lawsuit. Instead, the plaintiff argues exclusively that its pursuit of rescission under Count One establishes subject matter jurisdiction, on the grounds that "the face value of the policies stands as the amount in controversy." (Doc. 36 at 2). According to the plaintiff, this means the amount in controversy in this case is at least $1 million. (*Id*. at 6).[3] For reasons that appear below, the Court cannot agree.

"This Court has long held that when the validity of a life insurance policy is at issue in a case, the face value of the insurance policy is the amount in controversy." *Anderson v. Wilco Life Insurance Co.*, 943 F.3d 917, 925-26 (11th Cir. 2019). In such a situation:

> the insurer agrees to pay the full face value of the policies on the death of the insured, an event bound to happen. [Death] may occur at any time, and is an ever-present liability, which the insurer can do nothing to avert, except by seeking relief from a court of equity to cancel the policies on legal

---

[3] The plaintiff points to the $1 million per-occurrence limit, the $2 million aggregate limit, and the existence of three one-year policy periods. (Doc. 36 at 6).

> grounds. …. The only fixed and definite liability of the insurer is to pay the face [sic] of the policy. That amount measures the loss that plaintiff will suffer if the policies are not canceled.

*Guardian Life Insurance Co. of America v. Muniz*, 101 F.3d 93, 94 (11th Cir. 1996) (quoting *New York Life Insurance Co. v. Swift*, 38 F.2d 175, 176-77 (5th Cir. 1930)).

This case does not involve a life insurance policy, but the plaintiff's argument is that "[t]he same logic applies in the context of commercial general liability [hereinafter, "CGL"] policies." (Doc. 36 at 3). The plaintiff cites four cases as having extended the *Guardian Life* principle to CGL and similar policies, but only one of them actually did so. In *Hartford Insurance Group v. Lou-Con Inc.*, 293 F.3d 908 (5th Cir. 2002), the insurer was "not seeking to void the entire insurance contract" but wanted only a declaration of no duty to defend or indemnify with respect to particular claims. *Id*. at 909, 911. The Fifth Circuit's unamplified statement that "the policy limits are controlling in a declaratory action … as to the validity of the entire contract between the parties," *id*. at 911 (internal quotes omitted), is thus dicta. The same is true of *Frankenmuth Mutual Insurance Co. v. Personal Touch, Inc.*, 2023 WL 3136416 (S.D. Ala. 2023), which simply quoted *Lou-Con* while addressing a complaint seeking only a declaration of "no coverage for a particular occurrence" rather than challenging "the validity of the entire insurance contract/policy." *Id*. at *3 (emphasis omitted). And while the Eighth Circuit declared that when "the relief sought is a declaration of the validity or invalidity of a contract, the value of the contract determines the amount in controversy for the purpose of determining jurisdiction," this statement likewise is dicta, since the case addressed a petition that "did not ask the cancellation of the policies of insurance" but rather absolution from liability on a particular claim due to the insured's alleged arson. *Home Insurance Co. v. Trotter*, 130 F.2d 800, 801-03 (8th Cir. 1942).

That leaves *Evanston Insurance Co. v. Sun West Acquisition Corp.*, 2014 WL 988764 (M.D. Fla. 2014). The *Sun West* Court acknowledged "the lack of authority analyzing or applying this [*Guardian Life*] rule in the context of a general liability policy" but nevertheless extended it to that situation because, it believed, three other

4

appellate courts had done so. *Id*. at *6. Two of the three cases on which the *Sun West* Court relied (*Lou-Con* and *Trotter*) have been discussed above. In *Hawkins v. Aid Association for Lutherans*, 338 F.3d 801 (7th Cir. 2003), the Court stated that, "when the validity of a policy (as opposed to the insurer's obligation to pay) is in dispute, the face value of that policy is a proper measure of the amount-in-controversy." *Id*. at 805. However, because *Hawkins* involved life insurance policies, *id*. at 803-04, it is at best dicta as to any other kind of policy.

The Seventh Circuit cited four appellate decisions in support of the quoted statement but, as is becoming a familiar theme, none of them held that the face value of a CGL or similar policy establishes the amount in controversy when cancellation or rescission of the policy is at issue. *Guardian Life*, as noted above, involved a life insurance policy. *Budget Rent-A-Car, Inc. v. Higashiguchi*, 109 F.3d 1471 (9th Cir. 1997), involved an automobile policy but, because only "the applicability of Budget's liability coverage to a particular occurrence is at issue," *id*. at 1473, the Ninth Circuit's statement regarding the amount in controversy when the validity of the policy is at issue, *id*., is dicta. *Keck v. Fidelity and Casualty Co.*, 359 F.2d 840 (7th Cir. 1966), involved a disability policy where "the validity of the insurance policy is not in dispute," *id*. at 841, reducing its statement regarding the amount in controversy when the validity of the policy is at issue, *id*., to dicta. *Massachusetts Casualty Insurance Co. v. Harmon*, 88 F.3d 415 (6th Cir. 1996), was an action "to rescind a disability insurance contract," *id*. at 416, but it was filed only after a claim for disability benefits had been filed and initially honored. *Id*. Moreover, *Harmon*'s statement of the rule is expressly limited to disability contracts. *Id*.

*Sun West*, like several appellate decisions discussed herein, also relied on a leading treatise:

> [A]ssume a holder of a disability insurance policy claims that he is disabled permanently and brings suit for the benefits due him. The prevailing view … is that only the amount of the installments unpaid at the commencement of the suit may be taken into account, even though the judgment will be determinative of the company's liability for future

5

>   installments. ….
>      *The result is different when the validity of the entire insurance contract is brought into issue*, as would be true when the insurer sues to cancel the policy for fraud.  By the same token, *it has been decided in numerous cases that in a declaratory judgment action, brought either by the insured or the insurer, as to the validity of the entire contract between the parties, the amount in controversy is the face value of the policy*, although related costs and requests for 'other relief' may affect the overall amount in controversy.

14A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure Juris. § 3710 (4th ed. 2011) (emphasis added, footnotes omitted). Among the cases cited for the italicized proposition, *id*. nn.14-15, are *Guardian Life*, *Lou-Con*, *Higashiguchi*, *Harmon*, and *Trotter*.  As discussed above, none of these cases make such a sweeping holding.  Nor do other appellate decisions cited for this proposition.[4]

   The Court is aware of several cases applying *Sun West* and/or Section 3710 outside the context of life insurance or disability insurance.  *See Pekin Insurance Co. v. C.R. Onsrud, Inc*., 2020 WL 2334084 at *2-3 (W.D.N.C. 2020) (CGL policy); *North Star Mutual Insurance Co. v. Mayer*, 2019 WL 1367705 at *1-2 (D. Kan. 2019) (auto policy); *Hirschhaut v. UnitedHealthCare Insurance Co*., 2016 WL 8488279 at *2 (S.D. Fla. 2016) (health care policy).  The Court respectfully disagrees with these and other decisions to the extent they treat policy limits as automatically establishing the amount in controversy when the validity of any insurance policy is at stake.

---

   [4] *Elhouty v. Lincoln Benefit Life Co*., 886 F.3d 752, 754 (9th Cir. 2018); *In re: Minnesota Mutual Life Insurance Co. Sales Practices Litigation*, 346 F.3d 830, 834 (8th Cir. 2003); *Waller v. Professional Insurance Corp*., 296 F.2d 545, 546 (5th Cir. 1961); *Franklin Life Insurance Co. v. Johnson*, 157 F.2d 653, 655 (10th Cir. 1946); and *Bell v. Philadelphia Life Insurance Co*., 78 F.2d 322, 323 (4th Cir. 1935), all involved life insurance policies.  *See Anderson*, 943 F.3d at 926 (describing *Waller*).  Both *Ballard v. Mutual Life Insurance Co*., 109 F.2d 388, 389 (5th Cir. 1940), and *Mutual Benefit Health & Accident Association v. Fortenberry*, 98 F.2d 570, 571 (5th Cir. 1938), like *Keck* and *Harmon*, involved disability policies where a claim had already been made.  *New York Life Insurance Co. v. Kaufman*, 78 F.2d 398, 399 (9th Cir. 1935), involved both life and disability policies.  *Morris v. Franklin Fire Insurance Co*., 130 F.2d 553, 554 (9th Cir. 1942), involved a fire policy, but the amount of loss was by itself over the jurisdictional amount, rendering any other statements dicta.  *Duderwicz v. Sweeetwater Savings Association*, 595 F.2d 1008, 1010 (5th Cir. 1979), did not involve insurance at all.

"When a plaintiff seeks injunctive or declaratory relief, the amount in controversy is the monetary value of the object of the litigation from the plaintiff's perspective." *Cohen v. Office Depot, Inc.*, 204 F.3d 1069, 1077 (11th Cir. 2000) (en banc). "In other words, the value of the requested injunctive [or declaratory] relief is the monetary value of the benefit that would flow to the plaintiff if the injunction [or declaratory relief] were granted." *Id*. *Guardian Life* did not reference *Cohen*, but its analysis (actually, that of *Swift*) comports with that decision. Because death is "bound to happen," the life insurer has a "fixed and definite liability … to pay the face [value] of the policy," which is a "loss" that the insurer "will suffer" absent rescission. 101 F.3d at 94 (internal quotes omitted). In the context of life insurance, there are twin certainties: (1) the risk insured against will occur; and (2) the amount of the insurer's obligation will be the amount stated in the policy. The monetary value of the benefit that would flow to the insurer if rescission were granted is thus the face amount of the policy – a certain liability of a known amount that will be avoided by such relief.

The analysis as to disability policies is similar, once a claim for such benefits has been made, as in *Harmon*, *Ballard*, and *Fortenberry*. At that point, the risk insured against has (allegedly) occurred, and the amount of the insurer's obligation, though it may accrue only incrementally over time, can be calculated. The monetary value of the benefit to the insurer of cancelling the policy can thus be taken as the amount provided in the policy.

Liability policies like the one at issue here share neither of the key characteristics that justify treating the face value of a life insurance policy (or of a disability policy, once a claim is made) as the amount in controversy when rescission is sought. Death and taxes may be certain, but making a claim on a CGL policy is not.[5] Nor can the dollar value of a claim under a CGL policy be predicted before it is made, and many claims will not meet

---

[5] According to one online source, only 5.3% of insured homes had a claim on a homeowners insurance policy in 2021. Facts + Statistics: Homeowners and Renters Insurance, Insurance Information Institute, https://iii.org/fact-statistic/facts-statistics-homeowners-and-renters-insurance (last visited on September 5, 2023).

the jurisdictional threshold.  In this case, for example, the plaintiff has abandoned any effort to show that the Atwood lawsuit places over $75,000 in controversy.

The plaintiff insists that "the same logic" applies to CGL policies as to life policies, but its own explanation refutes its argument.  As the plaintiff concedes, its "only fixed obligation" is to pay "up to" the policy limits, and to do so only "upon the occurrence of covered events."  (Doc. 36 at 3).  That is exactly the point:  a covered event may never occur during the policy period and, even if it does, and even if a claim is made with respect to it, the amount of the claim cannot be known before the loss occurs.

The "object of the litigation" in an action to cancel a life insurance policy is to avoid the *certainty* of paying a *known* sum upon an event that *will necessarily* occur.  The monetary value of avoiding an otherwise certain loss of a certain amount is that amount.  In contrast, the objection of the litigation in an action to rescind a CGL policy is to avoid the *risk* of paying an *unknown* sum upon an event that *may or may not* occur.  Avoidance of that risk no doubt carries some monetary value, but it is necessarily less than the policy limits.[6]  The Court therefore rejects the plaintiff's position that the amount in controversy in this case is to be measured by policy limits.

The plaintiff presents no back-up argument that its claim for rescission places in controversy something less than policy limits but still above $75,000.  Because the burden is on the plaintiff, not the Court, to establish subject matter jurisdiction, the plaintiff's silence is fatal.  The Court nevertheless explains why any such argument, had the plaintiff made it, would fail.

*Cohen* establishes that, in a declaratory judgment action, the amount in controversy measures the monetary value of the benefit that "w[ill] flow" to the plaintiff if the policy is rescinded.  The benefit, and its monetary value, thus must be real and not

---

[6] To illustrate, imagine a policy paying up to $100,000 and insuring against a single risk: that of a meteorite striking the insured person during the one-year policy period.  The risk is real but infinitesimal, with only one human being in history (Alabamian Ann Hodges, in 1954) known to have ever been so struck (she survived, with minor injuries).  It would be absurd to suggest that the monetary value of the benefit to the insurer of rescinding such a policy is $100,000.

fanciful. *Roe* and other cases do not require the plaintiff to show with absolute certainty that the monetary value of the real benefit to the plaintiff of rescission will exceed $75,000, but they do require the plaintiff to establish that the monetary value of that real benefit is more likely to be above $75,000 than below that figure. They further require that this assessment be based on a preponderance of the evidence and not simply wishful thinking. A court may of course view the evidence through the filter of "judicial experience and common sense," *Roe*, 613 F.3d at 1062, "but it cannot speculate or hypothesize about facts that are not in the record." *Fox v. Ritz-Carlton Hotel Company, L.L.C.*, 977 F.3d 1039, 1048 (11th Cir. 2020).

As applied to this case, these rules require the plaintiff to show that, as of December 5, 2022,[7] it was more likely than not that, absent rescission, a second claim (in addition to Atwood) would be made on the Policy, which claim, alone or in combination with the Atwood matter, would seek over $75,000.[8] At first glance, that might not seem like a heavy lift, but if, as suggested in note 5, only a small percentage of policyholders make claims in a given year, even the three-year window at issue here is too short to show that it is more likely than not that such a claim will be made based on an occurrence within the Policy term.[9] The plaintiff thus must show that, despite the statistical unlikelihood of a claim on a random policy over a three-year period, a preponderance of the evidence reflects that, in December 2022, a second claim was more likely than not to be made on this particular Policy.

Although the plaintiff has made no argument along these lines, it has presented evidence from which one could be constructed. The plaintiff's grounds for rescission are that Wilson, in its August 2020 application, falsely denied, *inter alia*, having been

---

[7] The amount in controversy must be measured as of the date the complaint is filed. *PTA-FLA, Inc. v. ZTE USA, Inc.*, 844 F.3d 1299, 1306 (11th Cir. 2016).

[8] With respect to third-party claims, as opposed to first-party claims, the amount in controversy can include the costs of defending the insured. *Fastcase*, 907 F.3d at 1344 n.9.

[9] The Policy is an occurrence-based policy rather than a claims-made policy. (Doc. 343-1 at 33).

9

accused of breaching a contract and having been named in litigation regarding faulty construction. (Doc. 1 at 4). In support of its motion for default judgment, the plaintiff has submitted evidence that Wilson failed to disclose a suit brought by a customer ("Sumrall") for breach of contract, (Doc. 34-5), as well as conduct regarding a second customer ("Smith") that eventually resulted in criminal charges against Wilson's principal for theft by deception. (Doc. 34-14). The plaintiff has also submitted evidence of three civil suits filed by other customers ("Jimerson," "Harris," and "Davis") that address conduct occurring during the Policy term. (Docs. 34-8, 34-9, 34-10).

The plaintiff thus has evidence of six instances (counting the Atwood matter) of Wilson behaving badly. The question is whether this material demonstrates by a preponderance of the evidence that, as of December 2022, it was more likely than not that a second claim would be made on the Policy. The Court answers that question in the negative.

The Sumrall, Jimerson, and Harris actions all allege that Wilson took initial payments from the plaintiffs under promise to perform but never performed any work. (Doc. 34-5 at 3; Doc. 34-8 at 4; Doc. 34-9 at 2). Because the criminal records filed by the plaintiff do not reflect the circumstances of the charges, for jurisdictional purposes the Court must assume that the Smith incident follows the same fact pattern. The plaintiff has filed almost 700 pages of Policy documents. (Doc. 34-1). The Court is under no obligation to review this undifferentiated mass of material on the plaintiff's behalf, and it has not done so. Nevertheless, it may safely be assumed that the Policy does not insure against an insured's obtaining money from third persons by false pretenses; certainly the plaintiff has failed to argue or demonstrate the opposite. The plaintiff does not assert that any claim has been made against the Policy with regard to the Jimerson or Harris incidents,[10] and the Court must conclude that such a claim is unlikely and was unlikely in December 2022.

---

[10] The Sumrall and Smith incidents preceded the Policy term and so cannot be the subject of a claim.

The Davis complaint is similar to the Atwood complaint, in that it alleges that Wilson required and received a substantial up-front payment, performed part of the work, but never finished the pool. (Docs. 1-1, 34-10). Such conduct may support a colorable claim under the Policy, since the plaintiff defended the Atwood action under a reservation of rights, (Doc. 1 at 3), but the Davis matter has not resulted in a claim on the Policy, even though the conduct occurred in and before August 2021 and even though the Davis complaint was filed in October 2021, over a year before this action was initiated. (*Id*. at 1-5). The Court therefore concludes that a claim based on the Davis incident is unlikely and was unlikely in December 2022.

The only remaining possibility is that a claim may be made based on conduct of which the plaintiff is unaware despite its obviously thorough research. The Court finds that such an eventuality is unlikely and was unlikely in December 2022. For reasons stated, any additional instances of Wilson taking money while performing no work are not and were not likely to result in a claim on the Policy. While a third instance of Wilson abandoning a project might result in a claim, that is not and was not more likely than not to occur. First, it is not and was not more likely than not that Wilson had engaged or would engage in such activity on another occasion, especially since the only two known instances occurred back in April 2021 and August 2021.[11] Second, it is not and was not more likely than not that such conduct would result in a claim on the Policy, since only one of two such instances have done so.

Finally, the Court finds that it is not and was not in December 2022 more likely than not that a second claim, alone or in combination with the Atwood claim, would exceed $75,000. As noted, the plaintiff has failed to make any showing that the Atwood claim places a significant sum in controversy. It is therefore not more likely than not that any second claim would do so.

---

[11] Likewise, the Jimerson and Harris incidents occurred in and before the summer of 2021. (Doc. 34-8 at 3-4; Doc. 34-9 at 2). The Sumrall and Smith incidents occurred in 2019. (Doc. 34-5 at 2-3; Doc. 34-14 at 4).

## CONCLUSION

Equating policy limits with the amount in controversy in an action seeking rescission of a CGL policy is attractively simple, but it does not satisfy governing legal standards. For the reasons set forth above, the Court concludes that it lacks subject matter jurisdiction over this action. Therefore, the plaintiff's motion for default judgment is **denied**, and the Clerk's entry of default, (Doc. 16), is **vacated**. This action is **dismissed without prejudice** for want of subject matter jurisdiction.

DONE and ORDERED this 5th day of September, 2023.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE